IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KATHERINE GARGES, | : | CIVIL ACTION |
|---|---|---|
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| The PEOPLE'S LIGHT & | : | |
| THEATER, Co., *et al.*, | : | |
| *Defendants.* | : | No. 09-2456 |

M E M O R A N D U M

PRATTER, J.                                                                                                          OCTOBER 28, 2010

INTRODUCTION

Katherine Garges, who is *pro se*, has sued her former employer, the People's Light & Theater Company ("the Theater"), alleging primarily that the Theater discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA").[1] Ms. Garges' Complaint also sets forth a panoply of tort claims against the Theater and against three of her erstwhile co-workers, one of whom was her supervisor.

The Defendants have moved to dismiss four of Ms. Garges' tort claims against the Theater on the ground that they are barred by the exclusivity provision of the Pennsylvania Workers' Compensation Act ("the PWCA"), and have moved to dismiss a fifth tort claim against all Defendants on the ground that Ms. Garges failed to plead facts upon which relief could be granted. For the reasons set forth below, each of the contested portions of Defendants' Motion to Dismiss will be granted in full.[2]

---

[1] Ms. Garges also alleges violations of the Equal Pay Act of 1963 and the Fair Labor Standards Act of 1938; like her Title VII and PHRA claims, these statutory claims are not relevant to the resolution of the instant motion.

[2] As discussed in fn. 5, *infra*, Defendants have voluntarily withdrawn portions of their Motion to Dismiss, and the Motion will be denied to the extent that it still contains these portions.

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of this Motion to Dismiss, the facts alleged in Ms. Garges' Complaint are considered to be true. On that basis, the facts are as follows.

The Complaint states that Ms. Garges joined the Theater as a "sales representative" in 2002. Ms. Garges claims that she usually worked 12 to 15 hours per week, the maximum allowed for sales representatives, and was compensated under a commission system, which rewarded the sales representatives who did the most business. According to Ms. Garges, the Theater typically employed between eight and 10 sales representatives. There was a high turnover rate among representatives, "due in part to the high level of sales skill required to attain reasonable commission levels."

Ms. Garges describes the Theater as a rowdy and bohemian workplace, "with occasional nudity and frequent profanity on stage, and a freewheeling atmosphere offstage." She claims that employees of the sales department "exhibited disruptive, raucous behavior; ... used aggressive and profane language; conducted extensive personal business; and expressed vehement personal opinions among themselves." She further alleges that individual sales department employees "threw temper tantrums" and "frequently came to work noticeably intoxicated (on information and belief, with illegal drugs)," and she asserts that no sales department employee was ever terminated for this kind of behavior.

On the evening July 5, 2007, Ms. Garges was on the phone with a customer, when she

became embroiled in a verbal dispute with her supervisor, Adria Charles, the Theater's Sales Director. According to Ms. Garges, Ms. Charles began to "intentionally harass" Ms. Garges by yelling out to her and interrupting her phone call. Ms. Garges responded: "I'll eat your ass if you want me to, but I have to make this phone call first." Ms. Charles immediately fired Ms. Garges, and – according to Ms. Garges – also assaulted her.[3] The termination was soon ratified by Ellen Anderson, the Theater's general manager, who refused to listen to Ms. Garges' version of events before arriving at her decision.

On June 16, 2009, Ms. Garges filed suit against the Theater, Ms. Charles, and two of her co-workers, John David Clemens, Jr. and Terence Echlin. Her lengthy Complaint presents a total of 28 claims against the Defendants. Most of these claims relate to Ms. Garges' assertion that the stated reason for her firing – namely, insubordination – was "fabricated," and that she was in fact fired for legally impermissible reasons related to her gender and in retaliation for various complaints that she had previously lodged against co-workers. She also brings claims for assault and battery; breach of contract; negligence in hiring and supervision; defamation; and intentional infliction of emotional distress.

The Defendants have moved to dismiss Counts 22, 23, 24, and 28 of the Complaint in their entirety.[4] Count 22 alleges that the Theater ratified Ms. Charles' assault and battery; Counts

---

[3] Ms. Garges alleges that when she expressed surprise at being terminated, Ms. Charles "grabbed [her] wrist, pinning her at her desk" and then, after a verbal exchange, dropped her wrist and hit her repeatedly. Ms. Garges says that "having studied self-defense, [she] was able to move in synchrony with Defendant Charles' blows so as to avoid physical harm to herself without retaliating or resisting," but that she has "suffered ... prolonged psychological trauma as a direct result of [the] attack."

[4] The Defendants initially sought to have all of Ms. Garges' Title VII claims dismissed as time-barred – which would have disposed of Counts 1, 3, 5, 7, 9, 11, 13, and part of Count 25 – but they subsequently acknowledged that this argument lacked merit, and voluntarily withdrew this portion of the Motion to Dismiss. They also initially sought to have Counts 19 and 20 dismissed as failing to state any

3

23 and 24 allege that the Theater was negligent in hiring and supervision, respectively; and Count 28 accuses all Defendants of intentionally inflicting emotional distress. Count 21 sets forth an assault and battery claim against the Theater and Ms. Charles, and the Defendants have moved to dismiss this claim against the Theater but not against Ms. Charles.

For the reasons set forth below, all contested portions of the Motion will be granted.

**LEGAL STANDARDS**

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests the sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 127 S. Ct. at 1964-1965 (*quoting Conley*, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... ." *Id.* at 1965 (citations omitted). To survive a motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009) (confirming that *Twombly* applies to all civil cases).

---

claim upon which relief could be granted; they have withdrawn this argument as well. See Defendants' Reply to Response to Motion to Dismiss (Docket No. 10).

In addition, Ms. Garges concurs in the dismissal of Count 16, by which she had alleged violations of the Pennsylvania Equal Rights Amendment; and also in the dismissal of those portions of Counts 2, 4, 6, 8, 10, 12 and 14 that allege violations of the same Amendment. See Plaintiff's Reply to the Motion to Dismiss (Docket No. 9).

As noted above, the Court must accept the complaint's allegations as true. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 127 S. Ct. at 1965 (courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). However, the Court is under no obligation to accept as true a plaintiff's "unsupported conclusions and unwarranted inferences," *Doug Grant v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) *(citing City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or a plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997).

The Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and records of which the Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rts.*, 127 S. Ct. 2499, 2509 (2007); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

In considering the Defendants' motions to dismiss in this case, the Court remains cognizant of the reality that a less stringent standard is applied to pleadings drafted by *pro se* litigants when a Rule 12(b)(6) motion is at issue. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (emphasizing that a *pro se* complaint "no matter how inartfully pleaded, can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" – but finding that "even applying these liberal standards," plaintiff's claims were not cognizable under 18 U.S.C. § 1983). However, in

this context, the Court also takes judicial notice of the fact that Ms. Garges is or was an attorney, having been admitted to practice law in the Commonwealth of Pennsylvania in 1981.[5]

**DISCUSSION**

The Defendants seek the dismissal of Ms. Garges' assault and battery, ratification of assault and battery, negligent hiring, and negligent supervision claims. They argue that because these alleged torts arose out of an employment relationship between Ms. Garges and the Theater, Ms. Garges' claims are barred by the PWCA's exclusivity provision. Defendants further argue that the intentional infliction of emotional distress claim should be dismissed as against all Defendants, on the ground that the facts as alleged in the Complaint do not provide support for such a claim. The Court will address each of these arguments in turn.

### A. *The Pennsylvania Workers' Compensation Act*

The exclusivity provision of the PWCA provides that "the liability of an employer under the [PWCA] shall be exclusive and in place of any and all other liability." 77 P.S. § 481(a). This provision makes no exception for intentional torts, and Pennsylvania courts have not interpreted it to allow any such exception. *See Poyser v. Newman & Co.*, 522 A.2d 548, 551 (Pa. 1987); *see also Barber v. Pittsburgh Corning Co.*, 555 A.2d 766 (Pa. 1989) (noting that "the viability of any 'intentional tort exception' in Pennsylvania has at best been unclear," and observing that "this Court has never ... recognized such an exception to the exclusivity provisions of our workmen's compensation statute").

---

[5] *See* Exhibit C to Defendants' Motion to Dismiss (Martindale profile noting Ms. Garges' date of admission, and that she holds a J.D. degree from the University of Pennsylvania).

6

Ms. Garges does not argue that the exclusivity provision of the PWCA is entirely inapplicable under these circumstances, but proposes that this case falls within the ambit of *Kohler v. McCrory*, 615 A.2d 27 (Pa. 1992), in which the Court held that "exclusivity [under the PWCA] does not preclude damage recoveries by an employee, based upon employer negligence in maintaining a safe workplace, if such negligence is associated with injuries inflicted by a co-worker for *purely* personal reasons" (emphasis added). *Id.* at 30 (interpreting and applying the PWCA's "personal animus exception," found in 77 P.S. § 411(1)).

The appropriate inquiry as to this personal animus exception to exclusivity is not whether the injury occurred in the workplace, but "whether the injury is personal in nature and not a part of the proper employer-employee relationship." *Jackson v. Rohm & Haas, Co.*, 56 Pa. D. & C.4th 449 (Phila. Co. 2002) (*citing Schweitzer v. Rockwell Internat'l*, 586 A.2d 383 (1990)). However, "in determining whether an injury occurred during the course of employment there is a rebuttable presumption that the injury is work-related when the injury occurs at the workplace." *Id.* (*citing Wills Eye Hospital v. W.C.A.B.*, 1988 Pa. Commw. LEXIS 1018 (August 30, 1988).

In this case, Ms. Garges' Complaint provides no reason to believe that any of the torts that she alleges were committed for "purely personal reasons." Indeed, the Complaint goes to some lengths to make clear that they all arose during the course of her employment. Most notably, Ms. Garges claims that Ms. Charles assaulted her immediately after she expressed "disbelief" at her termination. Regardless of whether there had been prior friction between Ms. Garges and Ms. Charles, the Complaint makes no reference to any extracurricular feud between the two women. "Where the animosity between the third party and the injured employee is developed because of work-related disputes, the animosity is developed because of the

7

employment, and the injured employee's remedy is exclusively under the [PWCA]." *Abbott v. Anchor Glass Container Corp.*, 758 A.2d 1219, 1224 (Pa. Super. Ct. 2000).

The alleged ratification of the assault by Ms. Anderson is based on the same series of events, and there are no additional facts pled in Counts 23 or 24 that would alter this analysis with regard to the negligent hiring and supervision claims.[6] As a result, Count 21 will be dismissed as against the Theater, and Counts 22, 23 and 24 will be dismissed in full.

### B. *Intentional Infliction of Emotional Distress*

Ms. Garges' intentional infliction of emotional distress claim against all of the Defendants is based principally upon her termination, upon the assault that allegedly followed it, and upon her claim that one of the three individual defendants, Mr. Clemens, often yelled the word "bitch" and made comments suggesting a hostility to feminism.[7] Ms. Garges also accuses Mr. Clemens of lying about her with the goal of getting her fired, and claims that co-worker Mr. Echlin "heckled" her.

The behavior alleged in the Complaint clearly does not rise to the level required to succeed on a claim of intentional infliction of emotional distress. In order to make out such a claim, "the conduct [alleged] must be so outrageous in character, and so extreme in degree, as to

---

[6] Ms. Garges' negligent hiring and supervision claims, and her intentional infliction of emotional distress claim, are also related to the alleged assault. According to Ms. Garges, the Theater was negligent in hiring Ms. Charles because the Theater "knew or should have known that she was prone to displays of temper and mental instability, and was predisposed to violence." In addition, the Theater allegedly failed to supervise Ms. Charles by failing to impart to her that she lacked the authority to fire Ms. Garges without approval, and by failing to discuss or investigate Ms. Garges' assault allegation.

[7] The Complaint does not make clear whether Mr. Clemens is alleged to have directed the word "bitch" at Ms. Garges herself, or merely to have employed it regularly but indiscriminately.

8

go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *See Hoy v. Angelone*, 720 A.2d 745 (*quoting Buczek v. First National Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)).

It is not enough "that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.* (quoting Restatement (Second) of Torts § 46, comment; *Daughen v. Fox*, 539 A.2d 858, 861 (Pa. Super. 1988)). Successful claims tend to deal with matters of life or death. *See, e.g., Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979) (defendant, a team doctor, told a reporter that a member of the team suffered from a fatal blood disorder with actual knowledge that this was false). Claims based on wrongful firing have not ordinarily succeeded, even where, as here, exacerbating circumstances are alleged,[8] and indeed "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery." *Hoy*, 720 A.2d at. 754.

For this reason, Count 28 will be dismissed as against all Defendants.

---

[8] *See, e.g., DiNapoli v. Int'l Alliance of the Theatrical Stage Employees*, 2010 U.S. Dist. LEXIS 49619 (E.D. Pa. 2010) (no intentional infliction of emotional distress where terminated plaintiffs claimed, *inter alia*, fraud, conspiracy and retaliation); *Liakakos v. Cigna Corp.*, 1989 U.S. Dist. LEXIS 739 (E.D.Pa., Jan. 20, 1989) ("any termination of employment involves a degree of trauma for the individual employee [but this does not mean that mere termination should be] deemed so outrageous to fall outside the bounds of civilized behavior"); *Sugarman v. RCA Corp.*, 639 F.Supp. 780 (M.D.Pa. 1985) (false charges of theft leading to termination did not provide the basis for an intentional infliction of emotional distress claim); *Brieck v. Harbison-Walker Refractories*, 624 F.Supp. 363, 367 (W.D. Pa. 1985) (wrongful discharge, including age discrimination, did not provide the basis for a claim); *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 1151 1155 (E.D.Pa. 1984) (disparaging remarks about plaintiff and continued harassment leading to termination did not provide the basis for a claim).

CONCLUSION

For the foregoing reasons, Counts 16, 22, 23, 24 and 28 are dismissed in their entirety. Count 21 is dismissed as against the Theater. All references to the Pennsylvania Equal Rights Amendment in Counts 2, 4, 6, 8, 10, 12 and 14 are also dismissed. The Motion to Dismiss is denied only to the extent that Defendants initially sought dismissal of Counts 1, 3, 5, 7, 9, 11, 13, 19, and 20. An order to this effect follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE